UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY LEONARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:09CV1432 AGF |
| | ) | |
| UNKNOWN YOUNG, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff, a prisoner, brought this action under 42 U.S.C. § 1983 against Defendants David Young and Sgt. John Hooker, both of whom are correctional officers. Plaintiff asserts a claim against Young for alleged use of excessive force, and a claim against both Defendants for alleged deliberate indifference to Plaintiff's serious medical needs. Defendants have moved for summary judgment on the basis that Plaintiff has no evidence to support his claims and on the basis of qualified immunity. After reviewing the briefs and the record, the Court finds that Defendants are entitled to summary judgment on Plaintiff's claims.

**STANDARD**

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson, 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. Crossley v. Ga.-Pac. Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory

statements without support are not sufficient to defeat summary judgment. Armour & Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

## BACKGROUND[1]

During October 2008 Plaintiff was incarcerated at the Eastern Reception Diagnostic and Correctional Center. Defendant Young was assigned as an Escort Officer at all times relevant to the complaint. Defendant Hooker was a Sergeant and Young's supervisor.

On October 9, 2008, Young was instructed to escort Plaintiff from his cell in the administrative segregation unit to a classification hearing. What happened next is a matter of some confusion and is disputed by the parties. Defendants' statement of material facts says that Plaintiff refused to submit to being handcuffed but that Plaintiff put his hands through the food port opening and then jerked his hands away as Young attempted to apply the handcuffs. The statement of facts further asserts that after several attempts to apply the handcuffs, Young decided to close the food port opening and accidentally caught Plaintiff's hands in the food port while doing so. The statement of facts, however, is not supported by Young's affidavit. In his affidavit, Young states that he was trying to remove the handcuffs from Plaintiff but that Plaintiff refused. Young

---

[1] Plaintiff sought, and was granted, permission to file a surreply on or before September 19, 2010. Plaintiff timely filed his surreply. However, Plaintiff also filed, after the September 19, 2010, deadline, several additional exhibits he wished to be admitted into evidence. Plaintiff did not seek permission from the Court before filing these exhibits. Nevertheless, the Court will consider the additional exhibits, to the extent they are properly authenticated, for purposes of the motion for summary judgment.

-3-

further states that Plaintiff put his hands through the food port opening but kept jerking them back when Young attempted to remove the cuffs. Young states that after several attempts to remove the cuffs, he decided to close the food port opening and that he inadvertently caught Plaintiff's left thumb while doing so.

Plaintiff offers a different version of events. In his affidavit and verified brief, Plaintiff claims that Young came to his cell to transport him to the hearing, and Plaintiff submitted to being handcuffed at that time. After handcuffing him, Young removed Plaintiff from his cell. Plaintiff states that Young then became belligerent towards Plaintiff about a hat Plaintiff was wearing, and Plaintiff claims Young removed the hat and threw it on the ground. Plaintiff says he asked Young what was wrong and Young replied, "I don't have to live here for the rest of my life." Plaintiff claims that Young then returned Plaintiff to his cell and ordered Plaintiff to put his hands through the food port opening so that the handcuffs could be removed. Plaintiff says he did not comply at first, but asked to see Young's supervisor. Plaintiff maintains that Young ordered Plaintiff to put his hands through the opening again and that Plaintiff complied, although Plaintiff repeated his request to see a supervisor. At this point, Plaintiff claims, Young shoved his hands back through the food port in a rough manner, injuring Plaintiff's thumb and causing pain and bleeding. This incident occurred at about 8:30 a.m. For the most

part, Defendants do not controvert Plaintiff's statements of fact, which are supported by his affidavit.[2]

There is no dispute that immediately after the incident, Young informed Defendant Hooker that he had closed Plaintiff's thumb in the food port. In his affidavit, Hooker claims that Young informed him that Plaintiff had refused to "surrender to wrist restraints." Hooker went to Plaintiff's cell, and told Plaintiff to put his hands through the food port so that the handcuffs could be removed, and Plaintiff complied. Plaintiff claims that Hooker then looked at Plaintiff's injuries and evaluated them. Hooker claims that Plaintiff had a wash cloth covering his thumb and that Plaintiff would not remove it.

Hooker attests that he then informed the nurse about Plaintiff's injuries and that the nurse saw Plaintiff within ten minutes of the incident. This claim, however, appears to be contradicted by one of the medical records submitted by Defendants. According to the medical record, the nurse saw Plaintiff at 1:14 p.m., when she was in the administrative segregation unit on other business. Plaintiff states that he did not see the nurse until about 1:00 p.m. The nurse evaluated Plaintiff's hand and noted that he had

---

[2] Defendants respond to most of the numbered paragraphs in Plaintiff's statement of facts by asserting that the facts are not material, which does not serve to controvert the alleged facts. For example, in paragraph 11, Plaintiff states that after Plaintiff again requested to talk to a sergeant, "Defendant Young became very angry and out of anger, shoved the plaintiff's hands back through the food port, catching the plaintiff's left thumb in the food port, causing enormous amounts of pain and bleeding." (Doc. 52, ¶11). In response, Defendants simply state, "This is not a material fact. Defendants state that Plaintiff is not able to speculate as to the mental state of Defendant Young at the time of the allegations in question." (Doc. 55-1, ¶11.)

full range of motion in the left thumb and all digits and that he had mild redness in the area. The nurse assessed Plaintiff has having pain from tissue damage. The nurse told Plaintiff to apply ice to the area and to call the administrative segregation nurse if his conditions worsened. At approximately 5:00 p.m. that same day, Plaintiff was taken to the medical unit where his thumb was further evaluated and wrapped in gauze.

Plaintiff does not claim to have incurred lasting damage to his thumb as a result of the injury.

## DISCUSSION

1. <u>Official Capacity Claims</u>

Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official, in this case the State of Missouri. <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989). "[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983." <u>Id.</u> As a result, Defendants are entitled to summary judgment on Plaintiff's claims against them in their official capacities.

2. <u>Excessive Force Claim Against Young</u>

Young argues that he is entitled to summary judgment on Plaintiff's excessive force claim because Plaintiff has failed to show that he acted sadistically or maliciously and because Plaintiff has only demonstrated a de minimus injury, which precludes a constitutional claim for excessive force.

"'the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 327 (1986)). In the context of a prisoner's Eighth Amendment claim against a prison guard for the use of excessive force, "the core judicial inquiry is that set out in Whitley: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id.

There is no "significant injury" requirement, because "[o]therwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Nevertheless, the "Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Id. at 9-10 (holding that the blows directed at the plaintiff's mouth eyes, chest, and stomach, which caused bruises, swelling, loosened teeth, and a cracked dental plate, were not de minimis for Eighth Amendment purposes).

In Wilkins v. Gaddy, 130 S. Ct. 1175 (2010) (per curiam), the Supreme Court recently reaffirmed Hudson, and reversed an appellate court decision that dismissed a prison's complaint for failure to state an Eighth Amendment claim where the prisoner alleged that a corrections officer punched, kicked, kneed, choked, and body slammed him maliciously and sadistically and without any provocation, leaving him with a bruised

heel, back pain, and other injuries requiring medical treatment. The Supreme Court held that such injuries were not de minimus for Eighth Amendment purposes. Wilkins, 130 S. Ct. at 1179-80.

Here, even accepting Plaintiff's version of the facts as true, the Court concludes that Plaintiff fails to support an excessive force claim because his injuries were de minimus. Further, there was no showing that Young's actions were malicious or sadistic. At most, Young was angry and aggravated, and shoved Plaintiff's hands back through the food port, which is what Plaintiff claims caused the injury. The type of force used by Young was not "repugnant to the conscience of mankind." See Jones v. Shields, 207 F.3d 491, 495-96 (8th Cir. 2000) (holding that corrections officer who used pepper spray on inmate did not thereby violate inmate's Eighth Amendment rights where spray resulted in de minimis injury, as inmate's own testimony revealed that its effects cleared within 45 minutes, he was twice taken to infirmary and treated with water during that period, medical examination day after incident revealed no lingering effects, and there was no showing that officer's use of spray was malicious or sadistic); Fudge v. Page, No. 5:09CV00004, 2011 WL 768001, at *3 (E.D. Ark. Feb. 8, 2011) (Recommendation of Magistrate Judge to grant summary judgment to prison guards under facts remarkably similar to the instant case).

3.  Deliberate Indifference to Serious Medical Needs

Defendants argue that they are entitled to summary judgment on Plaintiff's medical mistreatment claims because Plaintiff's injury was not objectively serious and because the nurse saw Plaintiff shortly after the incident occurred.

"To prevail on an Eighth Amendment claim of deliberate indifference to serious medical needs, an inmate must prove that he suffered from one or more objectively serious medical needs, and that prison officials actually knew of but deliberately disregarded those needs."  Roberson v. Bradshaw, 198 F.3d 645, 647 (8th Cir. 1999). "'Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation.'" Id. (quoting Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)).  "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  Cambreros v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995).

Plaintiff has failed to demonstrate that a genuine question of material fact exists as to whether he sustained an objectively serious medical need.  Plaintiff's claim that his thumb bled and hurt for a short period of time does not demonstrate a severe injury.  And Plaintiff does not dispute the medical records in this case, which show that no later than a few hours of the incident Plaintiff was examined by a nurse.  At that time he had full

range of motion in his thumb and only mild redness.  Moreover, Plaintiff does not assert that he suffered any detrimental effect from any delay.  See Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997) (recognizing that "when an inmate alleges that the delay in treatment is the constitutional deprivation, the objective seriousness of the deprivation should also be measured by reference to the *effect* of delay in treatment."  (citations omitted.)  As a result, Defendants are entitled to summary judgment on Plaintiff's medical mistreatment claims.

        4.      Qualified Immunity

Defendants further argue that they are entitled to qualified immunity because the record demonstrates that they did not violate Plaintiff's clearly established rights.

"Government officials who perform discretionary functions are entitled to qualified immunity unless their alleged conduct violated clearly established federal constitutional or statutory rights of which a reasonable person in their positions would have known."  Wright v. Rolette Cnty., 417 F.3d 879, 884 (8th Cir. 2005).

In light of the above rulings, Defendants are entitled to qualified immunity in their individual capacities.  See  Frenchman v. Saloum, 236 F. App'x  235, 236 (8th Cir. 2007) (affirming the grant of summary judgment on the basis of qualified immunity because the facts taken in the light most favorable to the plaintiff did not establish an Eighth Amendment violation).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment is **GRANTED**. [Doc. #45]

A separate judgment shall accompany this Memorandum and Order.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 9th day of March, 2011.